**Opinion filed October 21, 2021**



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00070-CV

_____

## IN THE INTEREST OF V.L.M., A CHILD

**On Appeal from the 446th District Court**
**Ector County, Texas**
**Trial Court Cause No. E-20-026-PC**

### M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of the mother and the presumed father of V.L.M. The mother filed this appeal. On appeal, she presents five issues in which she challenges the legal and factual sufficiency of the evidence to support the trial court's findings. We affirm the trial court's order of termination.

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2020). To terminate

parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.*

In this case, the trial court found that Appellant had committed four of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), (N), and (O). Specifically, the trial court found (1) that Appellant had knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being, (2) that Appellant had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being, (3) that Appellant had constructively abandoned the child, and (4) that Appellant had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the child, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parents for abuse or neglect. The trial court also found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights would be in the best interest of the child.

To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). We note that the trial court is the sole arbiter of the credibility and demeanor of witnesses. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (citing *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005)).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

### *Evidence Presented at Trial*

The record shows that the Department became involved with Appellant after receiving four intakes in less than five weeks. The intakes stemmed from Appellant's bizarre police reports and the physical abuse of Appellant's daughter, V.L.M. According to Officer Bobby Pietropollo of the Odessa Police Department, Appellant came to the front desk and asked to file a police report on her ex-girlfriend, Andrea Hernandez. Hernandez had kicked Appellant out of Hernandez's residence but, when contacted by police, immediately brought Appellant's belongings and V.L.M., who was five years old at the time, to the police department. Appellant attempted to press charges against Hernandez for injuring V.L.M. A female officer confirmed that V.L.M. had bruises and marks on various parts of her body. The

officer took photos of V.L.M.'s injuries. Some of the bruises appeared to be fresh, but others were older.

Approximately two weeks later, Deputy Zac Dennis was dispatched to an address where Appellant was living with V.L.M. in an older model RV that was in serious disrepair. A child had called 9-1-1 from that location. Deputy Dennis testified that he had dealt with Appellant multiple times in the past. Appellant reported that "Diamond" had hit V.L.M. with a belt. Deputy Dennis observed marks on V.L.M., but based on their shape, he did not think they were caused by a belt. He also believed, based upon Appellant's demeanor, that she was lying. During this visit, V.L.M. appeared to be "in emotional duress" and was not her normal active, talkative self. Deputy Dennis contacted Child Protective Services because he was concerned for the well-being of V.L.M.

Four days later, Deputy Dennis received another dispatch to go to Appellant's residence. Appellant was complaining about "Diamond" showing up again and causing problems. During this encounter with police, Appellant appeared to be intoxicated. V.L.M. was again hesitant to talk to Deputy Dennis.

During all three of the above-mentioned visits with police, it was apparent that V.L.M. did not want to talk to the officers, at least not while Appellant was present. Instead of allowing V.L.M. to talk to the officers, Appellant interrupted and asked V.L.M. leading questions. Deputy Dennis testified that V.L.M. seemed to be afraid of Appellant.

Investigator Corina McMeans of the Ector County Sheriff's Office learned from V.L.M. that Appellant had threatened to kill V.L.M. with a purple pocketknife. The investigator confirmed that Appellant possessed a large purple pocketknife. Based upon her investigation and her conversations with V.L.M., Investigator McMeans determined that "Diamond" was not a real person and that Appellant

sometimes went by the name "Diamond." Investigator McMeans also determined that Appellant had falsely accused Hernandez of assaulting V.L.M.

Based upon the marks on V.L.M., the unsuitable living conditions, and the things to which Appellant had exposed V.L.M., Investigator McMeans thought that V.L.M. was in danger in Appellant's care. The Department took custody of V.L.M. and took her to Harmony Home for a forensic interview. V.L.M. was initially hesitant to participate in this interview because she had previously been interviewed there but released back to Appellant, who then "beat her ass." Investigator McMeans testified that V.L.M. eventually opened up about the physical abuse and about how angry Appellant often got at V.L.M. During the forensic interview, V.L.M. cursed and gave very graphic and detailed descriptions regarding sexual incidents that V.L.M. had observed between Appellant and Hernandez—things that a six-year-old could not make up.

Appellant was subsequently charged with the third-degree felony offense of injury to a child. While the termination case was pending, she pleaded guilty to that offense and was placed on deferred adjudication community supervision. By the time of the final hearing on termination, a motion to adjudicate had been filed in the criminal case, and a warrant had been issued for Appellant's arrest. The motion to adjudicate remained pending at the time of the termination hearing.

After she was removed from Appellant's care, V.L.M. attended counseling for approximately nine months. V.L.M. told her therapist about the physical abuse she endured from both Appellant and Hernandez. V.L.M. at one point stated: "Well, my mom tried to kill me." V.L.M. was exposed to ongoing domestic violence between Appellant and Hernandez. V.L.M. also reported that Appellant wanted V.L.M. to have sex with Appellant and Hernandez.

The record shows that, prior to moving to Texas, Appellant had been involved with child protective services in New York "on several occasions," and V.L.M. had

previously been removed from Appellant's care. Appellant had also been prescribed medication for her bipolar disorder, but she quit taking that medication when she moved to Texas.

After V.L.M. was removed, Appellant was ordered by the trial court to comply with her family service plan. Appellant participated in some of the services but generally failed to take responsibility for her actions. While the termination case was pending, Appellant moved into a shelter after she had an altercation with her brother. However, there were "a lot of incidents with [Appellant] in regard[] to her behavior" at the shelter. Appellant eventually moved back to New York. While in New York, Appellant did not have stable housing or employment and was not able to complete the services required by her family service plan.

At the time of trial, the Department's plans for V.L.M. were for her to remain in her current foster home until an adoptive forever home could be found. V.L.M. had lived in the same foster home throughout the proceedings below; however, that foster home is not a long-term or adoptive placement. The Department had been searching for suitable relatives with whom to place V.L.M., but had found none, and had just begun to search for an adoptive home.

The Department's conservatorship caseworker, along with the attorney that was appointed to be the child's attorney and guardian ad litem, believed that it would be in the child's best interest for Appellant's parental rights to be terminated. According to the ad litem, V.L.M. did not want to be returned to Appellant. Additionally, V.L.M.'s therapist testified that V.L.M. is afraid of Appellant and that continued contact with Appellant would not be in V.L.M.'s best interest.

*Analysis*

*Endangering Conduct*

In her first, second, third, and fourth issues, Appellant challenges the legal and factual sufficiency of the evidence to prove grounds (D), (E), (N), and (O). We need

6

only address her challenge to the trial court's finding under Section 161.001(b)(1)(E). *See In re N.G.*, 577 S.W.3d 230, 234–35 (Tex. 2019) (addressing due process and due course of law with respect to appellate review of grounds (D) and (E) and holding that an appellate court must provide a detailed analysis if affirming the termination on either of these grounds).

Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 34 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending conduct need not be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Physical abuse is endangering conduct. *In re M.P.B.*, No. 01-19-00973-CV, 2020 WL 3525447, at *8 (Tex. App.—Houston [1st Dist.] June 30, 2020, pet. denied) (mem. op.). Furthermore, domestic violence may constitute evidence of endangerment. *C.J.O.*, 325 S.W.3d at 265.

Here, based upon evidence that Appellant was physically abusive to V.L.M. and had exposed V.L.M. to domestic violence as well as sexual acts between Appellant and Hernandez, the trial court could have reasonably found by clear and convincing evidence that Appellant had engaged in a course of conduct that endangered V.L.M. Therefore, we hold that the evidence is legally and factually sufficient to uphold the trial court's finding as to Appellant under subsection (E). Accordingly, we overrule Appellant's second issue. Because only one statutory ground is necessary to support termination and because we have upheld the trial court's finding as to subsection (E), we need not address Appellant's first, third, and

fourth issues. *See* FAM. § 161.001(b)(1); *N.G.*, 577 S.W.3d at 234–35; *see also* TEX. R. APP. P. 47.1.

*Best Interest*

In her fifth issue, Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights would be in the best interest of V.L.M.

With respect to the child's best interest, the evidence, as set forth above, shows that Appellant endangered V.L.M., failed to complete the services that were required for V.L.M. to be returned to her, and failed to obtain and maintain a stable environment.

At the time of the termination hearing, V.L.M. lived with foster parents and was doing well in their care. She was scared of Appellant and did not wish to be returned to Appellant. Furthermore, Appellant had not demonstrated an ability or a willingness to put V.L.M.'s needs ahead of her own, nor had Appellant shown that she could provide a safe, stable home for the child. Further, the conservatorship caseworker, V.L.M.'s attorney and guardian ad litem, and V.L.M.'s therapist all believed that it would be in V.L.M.'s best interest to terminate Appellant's parental rights.

We hold that, in light of the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of Appellant's parental rights would be in V.L.M.'s best interest. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the desires of the child, the emotional and physical needs of the child now and in the future, the emotional and physical danger to the child now and in the future, the parental abilities of those involved, the plans for the child by the Department, Appellant's history of domestic violence, the physical abuse of V.L.M. while in Appellant's care, and the instability of Appellant's situation, we further hold that the

evidence is legally and factually sufficient to support the trial court's finding that termination of Appellant's parental rights is in the best interest of V.L.M. *See id.* We defer to the trial court's finding as to the child's best interest, *see C.H.*, 89 S.W.3d at 27, and we cannot hold in this case that the trial court's finding as to best interest is not supported by clear and convincing evidence. Accordingly, we overrule Appellant's fifth issue.

*This Court's Ruling*

We affirm the order of the trial court.

JOHN M. BAILEY
CHIEF JUSTICE

October 21, 2021

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.